IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL CHESS,

             Plaintiff,                   No. 2:06-cv-1639 LKK KJN P

    vs.

D.K. SISTO, et al.,

             Defendants,          FINDINGS AND RECOMMENDATIONS

_____/

I.  Introduction

        Plaintiff, a state prisoner proceeding without counsel, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court are motions for summary judgment by defendants Sisto, Scotland, Beyer, Crawford, Rallos and Bean, filed on September 14, 2009 (Dkt. No. 43), and defendant Munson, filed on February 12, 2010 (Dkt. No. 70).  Plaintiff properly filed an opposition to the first motion for summary judgment on October 29, 2009 (Dkt. No 50) and then proceeded to file additional oppositions on November 25, 2009 (Dkt. No. 56), and December 17, 2009 (Dkts. No. 57, 58), despite the court denying plaintiff's motion to file additional oppositions on November 25, 2009 (Dkt. No. 54).[1]  Plaintiff properly filed an opposition to

_____

[1] The only additional pages allowed by the court were several pages plaintiff filed on November 25, 2009 (Dkt. No. 55), that were accepted by the court on March 11, 2010 (Dkt. No

1    Munson's motion for summary judgment on February 18, 2010 (Dkt. No. 72), and then filed an

2    additional opposition on March 15, 2010 (Dkt. No. 79).

3    II. <u>Allegations</u>

4            This case is proceeding on the original complaint (Compl.), filed July 25, 2006.

5    Dkt No. 1.  Plaintiff alleges that Sisto, Beyer, Rallos, Bean and Munson were deliberately

6    indifferent to his serious medical needs, and Scotland and Crawford covered up the other

7    defendants' actions by denying plaintiff's inmate appeal.

8            Plaintiff states that in the evening of October 19, 2005, at California State Prison

9    Solano (CSP-Solano), while walking down the stairs from his top tier cell, he had a seizure and

10    fell down some stairs injuring himself.  Plaintiff was taken to the medical clinic where he was

11    treated by Nurse Munson.  Plaintiff was in pain and wanted to be seen by a doctor, but his

12    request was ignored.  Plaintiff alleges that he had pain in his neck, head, shoulder, ribs, leg and

13    feet.  After plaintiff was discharged by the clinic, Correctional Officer ("C/O") Beyer escorted

14    plaintiff back to his cell and allegedly ignored plaintiff's statements that he needed to be seen by

15    a doctor.  Plaintiff contends that Dr. Rallos examined him the following day regarding the fall

16    and did not provide adequate medical care.

17            Plaintiff argues that he had a chrono that stated he must be on lower bunk and in a

18    lower tier cell due to his seizures, but he was nonetheless housed on an upper tier.  Plaintiff states

19    that C/Os Beyer and Bean were aware of this tier restriction and should have housed him on a

20    lower tier cell so he would not have to walk stairs.

21            After the fall, plaintiff filed an inmate appeal seeking pain and seizure medication.

22    Scotland interviewed plaintiff regarding the incident and based on that interview Crawford

23    signed a memorandum concerning the first level response to the appeal which was partially

24    granted.

25

26    78).

III.  Motion for Summary Judgment

          Legal Standard for Summary Judgment

        Summary judgment is appropriate when it is demonstrated that the standard set forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought should be rendered  if . . . there is no genuine issue as to any material fact, and that the movant  is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

        Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id.

        If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the

3

form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

1 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586 (citation omitted).

2 IV. <u>Undisputed Facts</u>

3        The following of defendants' undisputed facts (DUF) are either not disputed by

4 plaintiff, or following the court's review of the evidence submitted, have been deemed

5 undisputed:

6        At all relevant times, plaintiff was incarcerated at CSP-Solano.  DUF #1.  At all

7 relevant times, C/O Bean was employed as a Correctional Treatment Center Officer.  DUF #2.

8 At all relevant times, C/O Beyer was employed as a Correctional Officer.  DUF #3.  At all

9 relevant times, Dr. Rallos was employed as a physician-surgeon.  DUF #5.  At all relevant times,

10 Nurse Munson was employed as a nurse.  Munson Motion for Summary Judgment (Munson

11 MSJ), Exh. E.  At all relevant times, Scotland was employed as a Correctional Sergeant.  DUF

12 #6.  At all relevant times, Crawford was employed as an Associate Warden.  DUF #4.  During

13 the relevant times, Sisto did not work at CSP-Solano.  DUF #7.

14        Plaintiff had sporadic seizures since 1986.  DUF #8.  Plaintiff was incarcerated at

15 CSP-Solano from 2003 to 2006, and he suffered approximately six seizures in that time period.

16 DUF #10.  When an inmate's condition requires an accommodation, the treating physician issues

17 a chrono.  DUF #11.  Only physicians may issue or alter chronos based on prisoner's medical

18 needs; custodial staff are not authorized to issue or modify chronos.  DUF #13.  When a chrono

19 is issued it supersedes all contrary chronos in effect at the time.  Motion for Summary Judgment

20 (MSJ), Declaration Dr. Rallos at ¶ 22.

21        Plaintiff had a chrono to provide a lower bunk and a lower tier cell from August 2,

22 2004, to August 2, 2005.  DUF #15.  From August 9, 2004, to March 10, 2005, plaintiff was

23 housed in lower tier cell.  DUF #16.  On November 23, 2004, another doctor issued plaintiff a

24 new chrono for a lower bunk but not for a lower tier cell.  DUF #17.  This chrono was good for

25 one year until November 23, 2005.  <u>Id</u>.  Regardless of the new chrono that did not mandate a

26 lower tier cell, plaintiff remained in a lower tier cell until March 10, 2005.  DUF #16, 17.

1  Plaintiff was housed in an upper tier cell for one day on March 20, 2005, for nearly a month

2  starting on April 22, 2005, and then from July 24, 2005, to October 19, 2005.  DUF #18, 19.

3          On October 19, 2005, plaintiff was housed in an upper tier cell.  DUF #19.  On

4  October 19, 2005, at approximately 9:00 pm, plaintiff had a seizure and fell down some stairs in

5  his housing building.  DUF #21.  Plaintiff did not sustain any lacerations and was not bleeding

6  after the fall.  DUF #22.  A cervical collar was applied to plaintiff at the scene.  Munson MSJ,

7  Exh. E.

8          Approximately 10 minutes after the fall, plaintiff was taken to the medical clinic

9  and seen by Nurse Munson.  DUF #23.  Nurse Munson took plaintiff's vital statistics including

10  blood pressure which was 110/70, heart rate which was 76 and temperature which was 97.4.

11  Munson MSJ, Exh. E.  Nurse Munson observed no injuries and noted plaintiff complained of

12  neck pain.  Id.  On Nurse Munson's handwritten Outpatient Interdisciplinary Progress Notes

13  report, she only indicted that plaintiff denied tenderness to any area other than at the base of the

14  neck.  MSJ, Exh. 4.  Approximately 30 minutes later, Nurse Munson again took plaintiff's vitals

15  and found that blood pressure was 112/64 and his heart rate was 69.  Munson MSJ, Exh. E.

16  Nurse Munson also phoned non-defendant Dr. Roher, who was familiar with plaintiff's medical

17  history and symptoms, to discuss plaintiff's fall.  DUF #25.  Dr. Roher prescribed an injection of

18  Toradol, a pain medication, but plaintiff refused.[2]  DUF #26, 27.

19          Nurse Munson discharged plaintiff from the clinic and C/O Beyer escorted

20  plaintiff back to his housing unit.  DUF #28.  En route back to the housing unit from the clinic,

21  plaintiff told C/O Beyer that he needed medical attention and C/O Beyer replied he could not

22  help plaintiff.  DUF #29.

23          The next day after the accident, October 20, 2005, plaintiff was examined by Dr.

24

25          [2] Plaintiff states he is allergic to Toradol.  Opposition to Motion for Summary Judgment
26  (Opposition), Dkt. No 50 at 4.  The court has also referred to all page numbers as they appear on
the court's electronic filing system, as respondent's pleadings are not numbered consecutively.

6

Rallos.  DUF #30.  Dr. Rallos' notes indicate that plaintiff only complained of a headache and decreasing vision.[3]  DUF #33.  Dr. Rallos' notes do not refer to any other pain complaints from plaintiff.  DUF #34.  Dr. Rallos found that plaintiff's pupils were normal, he had a full range of motion, his heart had a regular rate of rhythm, his lungs were clear and his grip was weak.  DUF #35.  Dr. Rallos stated in her notes that plaintiff's weak grip was secondary to his poor effort and she had observed plaintiff in the waiting room holding magazines and other papers without dropping them and he was able to get off the examination table using his hands without difficulty.  DUF #36.  Dr. Rallos concluded that the fall resulted in no neurological injury and no further medical attention was needed that night.  DUF #37, 38.

Dr. Rallos treated plaintiff again on October 28, 2005, after plaintiff stumbled and fell after receiving a CAT scan.  DUF #41.  Plaintiff felt he cracked the right side of his face and stated his ribs hurt.  DUF #41.  Dr. Rallos found no lower extremity weakness, normal pupils, no facial crepitation or bone irregularity and plaintiff's lungs were clear.  DUF #42.  Plaintiff's chest wall was tender, he was able to stand on his feet and toes and he had diminished bilateral knee reflex.  Id.

Because plaintiff complained of numbness to his legs and diminished vision, Dr. Rallos referred him to a neurologist and an optometrist.  DUF #43.  Dr. Rallos prescribed Tylenol #3 for pain and noted that he was to return in thirty days or as needed.  DUF #44.  Dr. Rallos also issued chronos for soft shoes, and for a lower bunk and lower tier.  DUF #45.

Plaintiff has seen many health care providers since October 19, 2005.  DUF #46. No one has ever told plaintiff that he had cracked any ribs as a result of the fall on October 19, 2005.  DUF #47.  No one has ever told plaintiff that he had sustained some injury on October 19, 2005, that should have been addressed.  DUF #48.

Plaintiff submitted an inmate appeal on October 30, 2005, seeking pain and

---

[3] Plaintiff was already blind in one eye.  Munson MSJ, Munson Declaration;  Compl. at 20.

1   seizure medication for injuries from the fall down the stairs on October 26, 2005.  DUF #51.

2   Plaintiff mistakenly wrote that he fell on October 26, 2005, when it was on October 19, 2005.

3   DUF #52.  Scotland interviewed plaintiff concerning the appeal.  DUF #53.  Crawford signed a

4   memorandum documenting the first level response to plaintiff's appeal.  DUF #54.

5          Sisto worked as an associate warden at CSP-Solano from 1992 to 2002.  DUF

6   #56.  From late 2002 until May 2006, Sisto did not work at CSP-Solano.  MSJ, Sisto Declaration.

7   At the time of the accident, Sisto was working at California institution for Men in Chino, CA.

8   Id.  From May 2006 to the present, Sisto has worked as a warden back at CSP-Solano.  DUF #61.

9   V.  Disputed Facts

10         The disputed facts bring to light an extremely disturbing aspect of this case.

11  Based on the exhibits provided by both parties, one of the parties has fabricated evidence and

12  presented it to the court as genuine.

13         The first disputed fact involves whether or not plaintiff had a chrono to only be

14  housed on a lower tier when the incident occurred on October 19, 2005.  Defendants have

15  annexed an exhibit that is a chrono from non-defendant Dr. Thor, on November 23, 2004, that

16  allowed plaintiff a lower bunk but did not provide for a lower tier, as the lower tier category is

17  crossed out.  MSJ, Exh. 2.  The chrono was to stay in effect for one year until November 23,

18  2005, during the time of plaintiff's accident.  Id.  The Dr. Thor chrono superseded a prior chrono

19  issued on August 2, 2004, by non-defendant Dr. Roher that mandated plaintiff stay in lower tier

20  until August 2, 2005.  MSJ, Exh. 1.  Defendants maintain that plaintiff was not required to be

21  placed in a lower tier at the time of the October 19, 2005 accident.

22         Plaintiff disputes defendants' assertion and contends that he had a lower tier

23  chrono that was effective October 19, 2005, and he has included exhibits indicating this alleged

24  fact in his complaint and opposition to summary judgment.  With respect to the Doctor Thor one

25  year chrono issued on November 23, 2004, plaintiff states that it was an error.  Opposition at 3-

26

4.[4]  Plaintiff's only support for the notion that the chrono was issued in error are prior chronos that allegedly state plaintiff was entitled to a lower tier for the duration of his incarceration at CSP-Solano.  Id.  However, the prior chronos that plaintiff has attached differ from the same chronos attached by defendants.

Plaintiff has included a chrono from non-defendant Dr. Naku, dated February 2, 2004.  Opposition at 22 (top of page).  The chrono has boxes checked off, that among other things, provide a low bunk and a low tier for the length of plaintiff's stay.  Id.  Plaintiff argues that because the chrono mandates a low tier for the length of stay any new chrono with different instructions cannot counteract this one.

However, in defendants' pleadings, what appears to be the exact same chrono, also mandates a lower bunk for the length of stay, but the lower tier box is not checked. Defendants Reply (Dkt. No. 51), Exh. 18.  In all other respects the chronos are exactly the same including stray pen marks.  Either plaintiff added a check to the lower tier box or else defendants somehow removed the check from the lower tier box.

Plaintiff has also submitted an exhibit in his opposition concerning a chrono issued by Dr. Roher.  Opposition at 22 (bottom of page).  In this chrono the lower tier and cane boxes are checked and circled, however the area indicating how long the chrono should last is crossed off.  The chrono is signed by a doctor on 5/9/04 and then signed by Dr. Roher, as acting chief physician on 5/13/05, apparently more than a year later.[5]

However, defendants have also submitted an exhibit of the same chrono. Defendants' Reply (Dkt. No. 51), Exh. 17 (middle of page).  Again, the signatures and stray pen

---

[4] The court notes that unless otherwise indicated, all references to plaintiff's opposition refers to Dkt. No. 50.

[5] The court notes that all the chronos contain two signatures and dates.  The first signature is by the doctor and dated and then the chrono is signed by the chief physician and dated.  Aside from this chrono, all the dates on the other submitted chronos are within two to eight days of each other, that is the chief physician signs off on the chrono a short time after the first doctor issues and signs it.

1   marks indicate that it is the same chrono, though only the cane box is checked off, the lower tier

2   box is not checked and it lists the duration as 3 months.  Also, the signature by Dr. Roher is dated

3   5/13/04.  Thus, plaintiff's chrono contains the lower tier box checked and Dr. Roher's date is the

4   same other than last digit of the date, "5/13/04," reads "5/13/05," and the three month duration

5   has been crossed out.  Defendants argue that the date has been altered by plaintiff to state 2005.

6   Defendants argument is quite strong as it does not make sense that it took more than a year for

7   Dr. Roher to approve the chrono, rather the four days on defendants' exhibit appears much more

8   appropriate.

9           Defendants also argue that while defendants' exhibits are authenticated

10   documents as declared by the custodian of records at plaintiff's current institution, plaintiff has

11   submitted non-authenticated documents.  MSJ, Declarations of Hanlon and Pepperdine.

12           Another potential issue of disputed fact concerns the injuries plaintiff supposedly

13   alleged when he was treated by Nurse Munson.[6]  Plaintiff maintains he told the nurse he was in

14   pain in his neck, head, shoulder, rib, leg and feet.  Opposition at 4.  Defendants contend that

15   plaintiff only stated that he felt pain in his neck and denied tenderness to any other part of his

16   body.  Munson MSJ, Declaration.

17           There is also a potential dispute concerning whether plaintiff told Dr. Rallos that

18   plaintiff's ribs hurt.  Plaintiff states that Dr. Rallos was aware that plaintiff's ribs were injured.

19   Opposition at 4-5.  Defendants maintain that plaintiff did not express any other complaints of

20   pain other than a headache and decreasing vision to Dr. Rallos.  DUF #33, 34.

21           It appears to the court that plaintiff has altered the evidence to demonstrate that he

22   
23           [6] Several of plaintiff's exhibits that document the examination by Nurse Munson contain
    descriptions of pain suffered by plaintiff on various parts of his body.  Other copies of the exact
24   same exhibit do not contain these additional descriptions.  It is clear these statements were not
    written by Nurse Munson.  In his opposition to summary judgment, plaintiff states that Nurse
25   Munson wrote these entries "in her own writing."  Opposition at 4.  Yet, in his opposition to
    Nurse Munson's motion for summary judgment, plaintiff contradicts his prior allegation, stating
26   that the entries were actually inserted by plaintiff to describe where he was in pain.  Opposition
    to Munson MSJ, Dkt No. 72 at 18-20.

1  had a chrono for a lower tier at the time of the accident and that he complained of other injuries.

2  However, even if plaintiff's chronos are accurate and even if plaintiff did have a chrono for a

3  lower tier, which the court has not determined, and even if plaintiff did tell Nurse Munson he

4  was in pain in other parts of his body, all of plaintiff's evidence still fails to demonstrate that a

5  genuine issue of material facts exists in that defendants were deliberately indifferent to his

6  serious medical needs.  For the reasons sets forth below, the court recommends that the motion

7  for summary judgment be granted as to all defendants.

8  VI.  Eighth Amendment Claim

9            Legal Standard

10            In order to state a § 1983 claim for violation of the Eighth Amendment based on

11  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

12  deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

13  To prevail, plaintiff must show both that his medical needs were objectively serious, and that

14  defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 299

15  (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite state of

16  mind for a medical claim is "deliberate indifference."  Hudson v. McMillian, 503 U.S. 1, 6

17  (1992).

18            A serious medical need exists if the failure to treat a prisoner's condition could

19  result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

20  that a prisoner has a serious need for medical treatment are the following:  the existence of an

21  injury that a reasonable doctor or patient would find important and worthy of comment or

22  treatment; the presence of a medical condition that significantly affects an individual's daily

23  activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900

24  F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

25  (9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

26  grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

1          In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court defined a very

2   strict standard which a plaintiff must meet in order to establish "deliberate indifference."  Of

3   course, negligence is insufficient.  Farmer, 511 U.S. at 835.  However, even civil recklessness

4   (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should

5   be known) is insufficient.  Id. at 836-37.  Nor is it sufficient that a reasonable person would have

6   known of the risk or that a defendant should have known of the risk.  Id. at 842.

7          It is nothing less than recklessness in the criminal sense – subjective standard –

8   disregard of a risk of harm of which the actor is actually aware.  Id. at 837-42.  "[T]he official

9   must both be aware of facts from which the inference could be drawn that a substantial risk of

10   serious harm exists, and he must also draw the inference."  Id. at 837.  Thus, a defendant is liable

11   if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by

12   failing to take reasonable measures to abate it."  Id. at 847.  "[I]t is enough that the official acted

13   or failed to act despite his knowledge of a substantial risk of serious harm."  Id. at 842.  If the risk

14   was obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42.

15   However, obviousness per se will not impart knowledge as a matter of law.

16          Also significant to the analysis is the well established principle that mere

17   differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

18   Amendment violation.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Franklin v.

19   Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  However, a physician need not fail to treat an

20   inmate altogether in order to violate that inmate's Eighth Amendment rights.  Ortiz v. City of

21   Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical

22   condition, even if some treatment is prescribed, may constitute deliberate indifference in a

23   particular case.  Id.

24          Additionally, mere delay in medical treatment without more is insufficient to state

25   a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766

26   F.2d 404, 407 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is

1   no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing

2   Wood v. Housewright, 900 F.2d 1332, 1339-40 (9th Cir. 1990). A finding that an inmate was

3   seriously harmed by the defendant's action or inaction tends to provide additional support for a

4   claim of deliberate indifference; however, it does not end the inquiry. McGuckin, 974 F.2d at

5   1060. In summary, "the more serious the medical needs of the prisoner, and the more

6   unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff

7   has established deliberate indifference on the part of the defendant." Id. at 1061.

8           Superimposed on these Eighth Amendment standards is the fact that in cases

9   involving complex medical issues where plaintiff contests the type of treatment he received,

10  expert opinion will almost always be necessary to establish the necessary level of deliberate

11  indifference. Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988). Thus, although there

12  may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the

13  treatment he received equated with deliberate indifference thereby creating a material issue of

14  fact, summary judgment should be entered for defendants. The dispositive question on this

15  summary judgment motion is ultimately not what was the most appropriate course of treatment

16  for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence,

17  criminally reckless.

18           Analysis

19           Lower Tier Chrono

20           Plaintiff generally alleges that all defendants were aware or should have been

21  aware that plaintiff had a chrono to be housed in a lower tier cell and defendants were therefore

22  deliberately indifferent to his serious medical needs by housing him in an upper tier and not

23  taking action to move him. Yet, plaintiff has failed to establish the existence of a any genuine

24  issue of material fact with respect to this claim. As discussed above, it is in dispute if plaintiff

25  even had a chrono mandating housing in a lower tier and it appears that plaintiff has fabricated

26  evidence to support his argument.

1        However, even assuming that plaintiff did have a chrono to be housed in a lower

2   tier at the time of accident, there is still insufficient evidence of deliberate indifference on behalf

3   of any of the defendants.  It is undisputed that plaintiff was housed in an upper tier cell for

4   several months prior to the October 19, 2005 accident.  Plaintiff was in an upper tier for a month

5   around April 22, 2005, and continuously from July 24, 2005, until the accident on October 19,

6   2005, nearly three months.  Yet, plaintiff has not presented any evidence that during all this time

7   when he allegedly had a chrono mandating a lower tier cell, did he request a lower tier or file an

8   inmate appeal describing how his chrono was not being followed.  Despite plaintiff's failure to

9   put defendants on notice, plaintiff contends that defendants should have been aware.

10       The only time plaintiff notified defendants that he was improperly housed on an

11  upper tier was immediately following the accident, when plaintiff states he told C/Os Beyer and

12  Bean as they escorted him to the medical clinic.  Opposition at 8.  Defendants cannot be found

13  deliberately indifferent if plaintiff never notified defendants of his medical needs.  Plaintiff's

14  argument that defendants simply should have known, will not suffice.  Assuming that plaintiff

15  had a chrono for a lower tier, plaintiff could have a claim that defendants were negligent.

16  However, plaintiff cannot meet the much higher threshold of deliberate indifference.

17       Moreover, had plaintiff in fact possessed a chrono mandating a lower tier, it is

18  reasonable to believe that it would have been followed.  On October 28, 2005, less than ten days

19  after the fall, Dr. Rallos issued plaintiff a lower tier chrono, due to the accident and plaintiff's

20  complaints.  Plaintiff has only presented unsupported conclusory statements that defendants were

21  purposely keeping him in an upper tier despite their awareness of a chrono.

22       Plaintiff has failed to present sufficient evidence that he possessed a lower tier

23  chrono and even if he did, there is still no genuine issue of material fact that defendants were

24  deliberately indifferent.  In support of his claims, plaintiff has relied on unsupported conclusory

25  allegations which cannot defeat summary judgment.  Leer v. Murphy, 844 F. 2d 628, 634 (9th

26  Cir. 1988).   Thus, defendants are entitled to summary judgment with respect to this claim.

1        <u>Nurse Munson</u>

2        Plaintiff has failed to demonstrate sufficient facts to show that Nurse Munson was

3   deliberately indifferent to his serious medical needs.  Plaintiff was seen by Nurse Munson ten

4   minutes after the accident.  Nurse Munson treated plaintiff for nearly an hour, repeatedly taking

5   vital statistics and phoning a doctor familiar with plaintiff's medical history for more

6   information.  Nurse Munson also offered plaintiff an injection to relieve pain, which plaintiff

7   refused.

8        It is undisputed that there were no visible injuries on plaintiff.  Even assuming

9   arguendo that plaintiff's facts are accurate, and plaintiff complained of head, shoulder, rib, and

10   leg pain, Nurse Munson was still not deliberately indifferent in her treatment.  Plaintiff argues he

11   should have been examined by a doctor or taken to an outside hospital.  However, plaintiff has

12   not presented sufficient evidence of any medical problems that resulted from not being seen by a

13   doctor or taken to an outside hospital.  Plaintiff merely states that he was in pain and continues to

14   suffer from pain throughout his body as a result of the incident.  Yet, it is undisputed that despite

15   several medical examinations in the years following the fall, plaintiff has never been diagnosed

16   with any problems resulting from the fall.

17        Plaintiff's conclusory statements that Nurse Munson was deliberately indifferent

18   are not sufficient.  Simply stating that further medical care was required without describing the

19   medical care needed is equally insufficient.  Plaintiff has not presented evidence that Nurse

20   Munson was negligent in her duties let alone evidence that could support the much higher

21   standard of deliberate indifference.  Summary judgment should be granted for this defendant.

22        <u>Dr. Rallos</u>

23        Plaintiff's claims against Dr. Rallos are equally insufficient.  Plaintiff alleges that

24   Dr. Rallos failed to provide treatment for pain and failed to inspect plaintiff's ribs to see if they

25   were broken.  However, it is in dispute if plaintiff complained of rib pain to Dr. Rallos.

26        Even if plaintiff did complain of rib pain, Dr. Rallos conduct was not deliberately

1    indifferent.  Dr. Rallos performed an adequate examination, finding that plaintiff's pupils were

2    normal, he had a full range of motion, his heart had a regular rate of rhythm and his lungs were

3    clear.  Dr. Rallos concluded that the fall resulted in no neurological injury, no further medical

4    attention was needed and no pain medication was required.  Ultimately, plaintiff disagrees with

5    the treatment he received.  However, a mere difference of opinion cannot serve as the basis for an

6    Eighth Amendment claim.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

7              Again, plaintiff has failed to demonstrate that any injury resulted from not being

8    prescribed pain medication or not having his ribs examined.  Plaintiff emphasizes what Dr.

9    Rallos' examination did not cover and concludes it was deliberate indifference, even though

10   there does not appear to be any harm that resulted.  If plaintiff's ribs had indeed been broken

11   which then led to further medical complications, there may be an argument for deliberate

12   indifference.  The fact that his ribs were allegedly not examined and no adverse effects resulted

13   will not support an Eighth Amendment claim.  Merely stating that his ribs hurt for a period after

14   the fall is insufficient.[7]  Plaintiff has not shown that he suffered serious injuries from his fall and

15   plaintiff has not established the existence of a genuine issue as to any material fact exists with

16   respect to Dr. Rallos.

17              C/Os Beyer & Bean

18              Plaintiff argues that C/Os Beyer and Bean should have placed him in a lower tier

19   cell as they were aware of his seizures and C/O Beyer should have provided medical assistance to

20   plaintiff, when C/O Beyer was escorting plaintiff from the medical clinic back to his cell.

21              As discussed above, the defendants including C/Os Beyer and Bean were not

22   deliberately indifferent to plaintiff's medical needs by failing to house him on a lower tier even if

23   there was a chrono mandating such placement.  In addition, it is undisputed that correctional

24   _____

25              [7] The court also notes that is undisputed that Dr. Rallos treated plaintiff again on October
     28, 2005, when it is undisputed that plaintiff complained about rib pain after another fall.  On
     this date Dr. Rallos examined plaintiff's ribs and found that the chest wall was tender, but he had
26   no more serious injuries.

1  officers cannot issue medical chronos as they are not medical professionals.  Plaintiff's argument

2  that C/Os Beyer and Bean should have placed him in a lower tier must fail as correctional

3  officers cannot and should not override medical orders from nurses and doctors.

4  Plaintiff's claim that C/O Beyer did not provide medical assistance is also

5  meritless.  Plaintiff was treated by Nurse Munson for approximately an hour immediately

6  following the accident.  Nurse Munson discharged plaintiff from the medical clinic and C/O

7  Beyer escorted plaintiff back to his housing unit.  It is undisputed that plaintiff stated he needed

8  additional medical attention but C/O Beyer replied he could not help plaintiff.

9  Plaintiff has presented no evidence that C/O Beyer was deliberately indifferent to

10  plaintiff's serious medical needs.  As discussed above, plaintiff has failed to show that any

11  serious medical complications or needs resulted from the fall that should have been treated.  C/O

12  Beyer escorted plaintiff back to the housing unit after plaintiff was discharged from the medical

13  clinic by a nurse.  C/O Beyer properly listened to the directives of a nurse rather than follow the

14  medical advice from plaintiff who was not pleased with his medical treatment.  Plaintiff has not

15  established that he was in need of additional medical treatment at that time or that C/O Beyer was

16  deliberately indifferent for not complying with plaintiff's requests.  Claims against C/Os Beyer

17  and Bean should be dismissed.

18  <u>Scotland & Crawford</u>

19  Plaintiff maintains that Scotland and Crawford attempted to cover up plaintiff's

20  accident.  Plaintiff has failed to establish the existence of a genuine issue as to any material facts

21  regarding the allegations against Scotland and Crawford.

22  Scotland interviewed plaintiff regarding plaintiff's inmate appeal seeking pain and

23  seizure medication after the accident.  Scotland provided his findings to Crawford who used the

24  findings in the memorandum responding to plaintiff's appeal.  Plaintiff maintains that the facts in

25  Scotland's report are false and inaccurate.  Other than conclusory statements of a cover up,

26  plaintiff has not presented sufficient evidence to find Scotland liable of any wrongdoing.

1    Plaintiff contends that certain witnesses who were interviewed by Scotland would

2    have reported different information, therefore Scotland never interviewed the witnesses or

3    changed the testimony.  However, plaintiff does not provide any declarations from these

4    witnesses saying that the testimony reported was incorrect.

5    The allegations against Crawford appear to arise from Crawford only partially

6    granting plaintiff's appeal, in that Crawford signed the memorandum.  None of the allegations

7    against these two defendants are sufficient.

8    In addition to the lack of evidence regarding any cover up during the appeal

9    process, prisoners do not have a "separate constitutional entitlement to a specific prison

10   grievance procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v.

11   Adams, 855 F.2d 639, 640 (9th Cir. 1988).  Even the nonexistence of, or the failure of prison

12   officials to properly implement, an administrative appeals process within the prison system does

13   not raise constitutional concerns.  Mann v. Adams, 855 F.2d at 640.  See also, Buckley v.

14   Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Azeez v. DeRobertis, 568 F.Supp. 8, 10

15   (N.D.Ill.1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any

16   substantive right upon the inmates.  Hence, it does not give rise to a protected liberty interest

17   requiring the procedural protections envisioned by the fourteenth amendment").  Specifically, a

18   failure to process a grievance does not state a constitutional violation.  Buckley, supra.  State

19   regulations give rise to a liberty interest protected by the Due Process Clause of the federal

20   constitution only if those regulations pertain to "freedom from restraint" that "imposes atypical

21   and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin

22   v. Conner, 515 U.S. 472, 484 (1995).

23   Plaintiff has not presented sufficient evidence of a constitutional claim against

24   Scotland and Crawford and as a matter of law plaintiff's claim must fail.

25   Sisto

26   There are no specific allegations against Sisto and plaintiff admits he is not sure

18

1   when Sisto worked at CSP-Solano.  MSJ, Plaintiff's Depo., at 57.  It is undisputed that Sisto was

2   not employed at CSP-Solano on the day that plaintiff fell.  During the relevant time period, Sisto

3   was working at California institution for Men in Chino, CA.  MSJ, Sisto Declaration.

4          Plaintiff has failed to set forth sufficient facts that link Sisto to the alleged

5   constitutional deprivation.  It is required that there be an actual connection or link between the

6   actions of the defendant and the deprivation alleged to have been suffered by plaintiff.  See Rizzo

7   v. Goode, 423 U.S. 362, 377 (1976).  "A person 'subjects' another to the deprivation of a

8   constitutional right, within the meaning of  § 1983, if he does an affirmative act, participates in

9   another's affirmative acts or omits to perform an act which he is legally required to do that causes

10  the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.

11  1978).

12         There are no facts connecting Sisto to this incident, therefore summary judgment

13  should be granted for Sisto.

14  VII.  Qualified Immunity

15         Because the court has found that the conduct alleged by plaintiff does not state a

16  constitutional deprivation, the court need not address defendants' arguments for qualified

17  immunity.

18         IT IS HEREBY RECOMMENDED that the motions for summary judgment, Dkt

19  Nos. 43, 70, be granted as to all defendants and this case be closed.

20         These findings and recommendations are submitted to the United States District

21  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

22  one days after being served with these findings and recommendations, any party may file written

23  objections with the court and serve a copy on all parties.  Such a document should be captioned

24  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

25  objections shall be filed and served within fourteen days after service of the objections.  The

26  parties are advised that failure to file objections within the specified time may waive the right to

1  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

2  DATED:  May 11, 2010

3

4

5                                                    _____
                                                     KENDALL J. NEWMAN
6                                                    UNITED STATES MAGISTRATE JUDGE

7

8  ches1639.sj

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26